959 F.2d 241
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
M.L. INVESTMENT COMPANY, Plaintiff-Appellant,
v.
The SECRETARY OF THE INTERIOR, BUREAU OF LAND MANAGEMENT OF
THE DEPARTMENT OF THE INTERIOR OF THE UNITED STATES of
America; J. David Brunner, Boise District Manager of the
Bureau of Land Management, United States Department of
Interior, Defendants-Appellees.
 No. 90-35561.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 6, 1992.*
Decided April 1, 1992.
 
 Before EUGENE A. WRIGHT, WILLIAM A. NORRIS, and CYNTHIA HOLCOMB HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 * Plaintiff M.L. Investment Company ("MLI") brought suit in the district court challenging a Final Decision issued by the Bureau of Land Management ("BLM"). The district court granted a portion of MLI's requested relief by striking the "full force and effect" clause in the Final Decision. MLI then filed an application in the district court requesting attorney's fees under the Equal Access to Justice Act ("EAJA"). The district court granted costs, but denied attorney's fees based on its finding that the government's position was "substantially justified." MLI appealed and the Ninth Circuit remanded the case, ordering the district court to set forth specific reasons for the denial of fees and expenses. The district court explained its reasoning and MLI now continues its appeal.
 
 II
 
 3
 As a threshold matter, the only issue before us is whether the district court erred in determining that the government's position regarding the full force and effect clause was substantially justified. MLI erroneously attempts to inject an additional issue into the appeal by arguing that the BLM's action in dividing the Center Allotment was not justified because the 1983 agreement was not reduced to writing.
 
 
 4
 This persistent focus on the 1983 agreement is misguided. First, MLI concededly challenged only the propriety of the full force and effect clause in the BLM's Final Decision. Second, even if the propriety of the range division was at issue, range divisions are properly accomplished either by a written agreement between permittees and the BLM or by a written decision by the BLM. BLM Manual 4111.32F.3. The BLM's Final Decision satisfies the latter requirement. In fact, MLI unwittingly admitted in its reply brief that the BLM's proposed decision "would have been unnecessary had a valid agreement been made." Third, the existence of a written agreement would be relevant only if the issue involved the enforceability of a range division agreement. Here, we are concerned with the propriety of the full force and effect clause, and this question depends on the existence of an 'emergency' regarding deteriorating resources, not the existence of a written agreement.[1]
 
 III
 
 5
 Under the EAJA, the United States will not be liable for attorney's fees and expenses to a prevailing party if the "court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The United States Supreme Court has interpreted the phrase "substantially justified" to mean "justified in substance or in the main--that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). We must examine (1) the government's decision to include a full force and effect clause in the Final Decision and (2) its decision to defend that action in subsequent litigation. See Kali v. Bowen, 854 F.2d 329, 332 (9th Cir.1988). The fact that the government failed to prevail does not raise a presumption that its position was not substantially justified. Id.
 
 
 6
 * With regard to the first inquiry, we find that the BLM's decision to include the full force and effect clause was substantially justified. Regulation section 4160.3(c) authorizes the inclusion of a full force and effect clause "in an emergency to stop resource deterioration." 43 C.F.R. § 4160.3(c). Instead of using the word "emergency," the Final Decision cited section 4160.3(c) and stated that "[t]he necessity of this [full force and effect] action lies in the need to protect the range resource through orderly administration and avoid resource degradation that would likely result from uncontrolled competition for certain portions of the range."
 
 
 7
 The government's interpretation of the regulation as not requiring explicit use of the word "emergency" is reasonable. While the regulation does require a finding of an emergency as a prerequisite to placing a decision in full force and effect, the plain language does not require that the decision contain an explicit and detailed statement using the word "emergency." The lack of precedent interpreting this portion of section 4160.3(c), and the reasonableness of the BLM's interpretation weigh in favor of finding the government's position substantially justified. See Kali, 854 F.2d at 332 n. 2 ("The [district] court's observation that the Ninth Circuit had not yet addressed the issue was an appropriate component of the inquiry into substantial justification."); Petition of Hill, 775 F.2d 1037, 1042 (9th Cir.1985) (the government "may sustain [its] burden by showing its position is a novel but credible ... interpretation of the law.") (citation omitted).
 
 
 8
 Moreover, the district court's finding that the government "had a good faith belief that an emergency existed due to drought conditions" is not clearly erroneous. A drought had plagued the region for several years and the BLM had closed many areas for reseeding and regeneration.[2] The closings decreased the number of areas with sufficient resources for grazing. Because the permittees had informally agreed to maintain private use areas, there was no danger of competition for valuable resources in certain portions of the range, and thus no corresponding danger of further resource degradation. MLI's threat to begin using the whole Center Allotment, however, altered the situation. The BLM reasonably feared that MLI's unrestricted use would increase resource deterioration and inhibit the BLM's ability to protect the areas that were closed for regeneration.
 
 
 9
 MLI advances four arguments for why the government's position was not substantially justified, each of which is meritless. First, the explanation contained in Jerry Taylor's affidavit is not a post-hoc rationalization. This case is unlike Thomas v. Peterson, 841 F.2d 332 (9th Cir.1988), because Jerry Taylor's statement is not an attempt to make up for a deficiency in the Final Decision. Instead, the statement recounts the factors that induced the BLM to put a portion of the Final Decision into full force and effect. Second, the BLM's desire to maintain the "status quo" can justify placing a decision in full force and effect. If deviation from the status quo would cause an emergency, then maintenance of the status quo is the proper preventive medicine. Third, the fact that the government anticipated an appeal does not mean its position was not substantially justified. Parties have the right to appeal adverse decisions. Anticipating that the losing party will take advantage of this right indicates nothing about a party's view of the merits. Finally, the delay between the proposed decision and the Final Decision does not belie the existence of an emergency. The Final Decision was issued within three weeks of MLI's threat to deviate from the 1983 agreement and use the whole Center Allotment for grazing purposes. In fact, had the BLM instituted the Final Decision at any time prior to becoming aware that MLI would deviate from the 1983 agreement, the BLM would have had a difficult time demonstrating the existence of an emergency.
 
 B
 
 10
 Turning to the second inquiry, we must determine whether the government's litigation position was substantially justified. We answer that question in the affirmative. Not only was the government's view of the merits reasonable, but its decision to defend the action was also reasonable. Kali, 854 F.2d at 332 (the second inquiry encompasses examination of position regarding merits, as well as decision to defend action). Case law provided no guidance on how to interpret the requirements of section 4160.3(c), and the BLM's interpretation of the regulation was reasonable. See id. at 332 ("existence of precedents construing similar statute or similar facts" are important to the reasonableness of the government's decision to defend an action at trial). Thus, the government's decision to defend the action in court was substantially justified.
 
 
 11
 The district court did not abuse its discretion in refusing to award attorney's fees. The decision of the district court is therefore AFFIRMED.[3]
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34.4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court stated that the "agency was initially justified in finding that the plaintiff should be bound by the agreement that he had entered into, whether it was written or verbal." This statement does not indicate that the propriety of the range division is in issue, because the district court carefully defined the issue as involving only whether the government's position regarding the full force and effect clause was substantially justified. Moreover, the district court's statement has a logical relation to the substantial justification issue. To determine that unrestricted use of the Center Allotment would have a disastrous effect on resource availability, the BLM first had to determine that all permittees had been using separate portions of the Center Allotment
 
 
 [2]
 MLI argues that there was no "existing condition of resource deterioration" because Jerry Taylor indicated that he was unsure whether 1990 would be a drought year. This argument is meritless. Mr. Taylor's affidavit states that there were three consecutive years of drought, and that this, in conjunction with the wildfires, resulted in resource deterioration. Whether 1990 would also be a drought year did not alter the fact that at the time of the Final Decision, there was an existing condition of resource deterioration
 
 
 [3]
 MLI's request for attorney's fees on appeal is denied as it is not the prevailing party under the EAJA